**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

**TIFFANY CUMMINGS,**
**CAROLYN SANDERS,**
**CRYSTAL SHOOK,**
**DANILA ZALDIVAR,**
**DEBORAH HERNANDEZ,**
**GILLIAN CLYNE,**
**JAIR ALVAREZ,**
**MATTHEW BRUMFIELD,**
**MICHAEL GREEN,**
**RAFAEL PICHARDO,**
**STEPHANY HERNANDEZ,**
**And VICTOR VEGA**

|  |  |
|---|---|
| **Plaintiffs** | **Civil Action No. ___** |
| **v.** | |
| | |
| **AMERICREDIT FINANCIAL** | **Complaint** |
| **SERVICES, INC d/b/a GM FINANCIAL,** | |
| **TRANSUNION, LLC,** | |
| **PENNSYLVANIA HIGHER** | |
| **EDUCATION ASSISTANCE AGENCY** | |
| **d/b/a AMERICAN EDUCATION** | |
| **SERVICES,** | **and** |
| **CHASE AUTO FINANCE,** | |
| **PENNSYLVANIA HIGHER** | |
| **EDUCATION ASSISTANCE AGENCY** | |
| **d/b/a FEDLOAN SERVICING,** | **Demand for Jury Trial** |
| **CAPITAL ONE,** | |
| **NAVIENT,** | |
| **SPECIALIZED LOAN SERVICING,** | |
| **CHASE CORPORATION, and** | |
| **USDOE/GLELSI** | |
| | |
| **Defendants** | |

## **COMPLAINT**

1

NOW comes the Plaintiffs, CAROLYN SANDERS, CRYSTAL SHOOK, DANILA ZALDIVAR, DEBORAH HERNANDEZ, GILLIAN CLYNE, JAIR ALVAREZ, MATTHEW BRUMFIELD, MICHAEL GREEN, RAFAEL PICHARDO, STEPHANY HERNANDEZ, TIFFANY CUMMINGS, VICTOR VEGA (hereinafter the "Plaintiffs"), through their Counsel of record and through their complaint against the Defendants allege the following:

## PRELIMINARY STATEMENT

1.   This is an action for actual, statutory and punitive damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681 et seq. (Federal Fair Credit Reporting Act)

## JURISDICTION AND VENUE

2.   Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

3.   Venue in this District is appropriate under 28 U.S.C. §1391(b)(1) because defendants in this matter reside in the state of Louisiana as defined under 28 U.S.C. §1391 (c)(2). Furthermore, Plaintiff Tiffany Cummings resides in the Eastern District of Louisiana.

## PARTIES

4.   Plaintiff TIFFANY CUMMINGS is a natural person and is a citizen of the United States of America and Louisiana. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.   Plaintiff CAROLYN SANDERS is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6.   Plaintiff CRYSTAL SHOOK is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7.  Plaintiff DANILA ZALDIVAR is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8.  Plaintiff DEBORAH HERNANDEZ is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9.  Plaintiff GILLIAN CLYNE is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Plaintiff JAIR ALVAREZ is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

11. Plaintiff MATTHEW BRUMFIELD is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

12. Plaintiff MICHAEL GREEN is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

13. Plaintiff RAFAEL PICHARDO is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

14. Plaintiff STEPHANY HERNANDEZ is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

15. Plaintiff VICTOR VEGA is a natural person and is a citizen of the United States of America. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

16. Defendant, TRANSUNION LLC, (hereinafter TransUnion) is a foreign For-Profit Corporation registered to do business in Louisiana and with a principal place of business in Louisiana. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d) to

third parties.

17. Defendant, AMERICREDIT FINANCIAL SERVICES, INC, is doing business in Louisiana under the Trade name GM FINANCIAL (hereinafter GM Financial) is a for profit company registered to do business in Louisiana and with a principal place of business in Louisiana. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

18. Defendant, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY d/b/a AMERICAN EDUCATION SERVICES (hereinafter AES) is a for profit company registered to do business in Louisiana. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

19. Defendant, Chase Auto Finance (hereinafter Chase Auto Finance) is a for profit company formerly registered to do business in Louisiana, but still doing business in Louisiana. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

20. Defendant, Chase Corporation (hereinafter Chase Corporation) is a for profit company registered to do business in Louisiana and with a principal place of business in Louisiana. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

21. Defendant, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY d/b/a Fedloan Servicing (hereinafter Fedloan Servicing) is a for profit company registered to do business in Louisiana. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

22. Defendant, Specialized Loan Servicing (hereinafter Specialized Loan Servicing) is a for profit company registered to do business in Louisiana. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions.

23. Defendant, Capital One (hereinafter Capital One) is a for profit company registered to do business in Louisiana with a principal place of business in Louisiana. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions

24. Defendant, Navient (hereinafter Navient) is a for profit company registered to do business in Louisiana. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions

25. Defendant, USDOE/GLELSI (hereinafter USDOE/GLELSI) is a for profit company registered to do business in Louisiana. Defendant is a "furnisher" of information, as defined by 15 U.S.C §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to one or more consumer reporting agencies about consumer transactions

**FACTUAL ALLEGATIONS**

26. All Plaintiffs below incorporate by reference all the foregoing paragraphs as though the same were set forth at length herein.

**As to Carolyn Sanders v. TransUnion/AES**

27. Plaintiff, Carolyn Sanders, paid off the AES accounts were paid in full on or about July 2012.

28. TransUnion's credit report dated January 26, 2017, reported two AES accounts with a "Pay Status: Account 120 Days Past Due Date."

29. However, even though Sanders accounts were paid in full, Plaintiff's TransUnion credit report dated January 26, 2017, reports the "Pay Status 120 days past due". It is impossible and incorrect for an account that was paid off and brought current with a "0" balance in July 2012 to still be reporting as currently 120 days past due as of January 26, 2017. Not only are the AES accounts false on the face of the credit report but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on these accounts that were previously paid off in full.

30. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated April 4, 2017. As a result of Plaintiff's dispute, AES verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information. TransUnion continued to report the inaccurate credit information at the instruction of AES. TransUnion's latest credit report dated January 4, 2018 is currently reporting the same inaccurate information that was reported on the January 26, 2017 credit report of Carolyn Sanders.

**As to Crystal Shook v. TransUnion/Fedloan Servicing**

31. Plaintiff, Crystal Shook, Fedloan Servicing accounts were paid in full on or about May 19, 2016.

32. As of April 2017, TransUnion was reporting approximately ten Fedloan Servicing accounts with a "Pay Status: Account 90 Days Past Due Date." However, even though Shook's accounts were paid in full, Shook's TransUnion credit report is reporting the "Pay Status 90 days past due" on all ten of them.  After Plaintiff the accounts were paid in full, the accounts were still reported by TransUnion with a $0 balance and with monthly payments that are due. It is impossible and incorrect for an account that was paid off and brought current with a "0" balance in May 2016 to still be reporting as currently 90 days past due as of July 24, 2018.  Not only are the Fedloan Servicing accounts false on the face of the credit report, but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on these accounts that were previously paid off in full.

33. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated September 28, 2017.  As a result of Plaintiff's dispute, Fedloan Servicing verified the accounts as accurate and instructed TransUnion to continue to report the inaccurate credit information on these accounts. TransUnion continued to report the inaccurate credit information at the instruction of Fedloan Servicing.  TransUnion's latest credit report dated July 24, 2018 is currently reporting the same inaccurate information that was reporting as of April 2017.

**As to Deborah Hernandez v. TransUnion/Fedloan Servicing**

34. Plaintiff, Deborah Hernandez, Fedloan Servicing account was paid in full on or about February 2017.

35. TransUnion's credit report dated September 20, 2017, reported the account with a "Pay Status: Account 120 Days Past Due Date."

36. Even though the Hernandez Fedloan Servicing account was paid off in full, Plaintiff's TransUnion credit report dated September 20, 2017, reports the "Pay Status 120 days past due date".  After the Hernandez Fedloan Servicing account was paid off in full, the account is reporting by TransUnion with a $0 balance, but still reporting the "Pay Status 120 days past due" as of September 20, 2017 when the TransUnion credit report was created.  It is impossible and incorrect for an account that was paid off and brought current with a "0" balance in February 2017 to still be reporting as currently 120 Days Past Due Date as of September 20, 2017.  Not only are the Fedloan Servicing accounts false on the face of the credit report but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on these accounts that were previously paid off in full  Not only is the Fedloan serving account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

37. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated December 4, 2017.  As a result of Plaintiff's dispute, Fedloan Servicing verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Fedloan Servicing.  TransUnion's latest credit report dated January 5, 2018 is currently reporting the same inaccurate information that was reported on her September 20, 2017.

**As to Gillian Clyne v. TransUnion/GM Financial**

38. Gillian Clyne paid off the relevant GM Financial account in full on or about June 2012.

39. TransUnion's credit report dated January 15, 2017, reported the GM Financial account with a "Pay Status: Account 90 Days Past Due Date" even though the balance on the account was report as "0." The "0" balance was correct due to the fact Clyne had paid off her account in full, but the TransUnion credit report dated January 15, 2017, was still reporting the GM Financial account with a "Pay Status 90 days past due".  Even though Plaintiff paid the account in full and TransUnion report the account with a $0 balance, TransUnion still reported that that monthly payments are due, "Terms: $314 per month for 64 months" and the "Pay Status 90 days past due." as of January 15, 2017, when the TransUnion credit report was created.  It is impossible and inaccurate for an account that was paid off in full and brought current with a "0" balance in June of 2012 to still be reporting as currently 90 Days Past Due Date as of January 15, 2017.  Not only is the GM Financial account false on the face of the credit report but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on the account that was previously paid off in full.

40. Not only is the account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

41. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated March 2, 2017.  As a result of Plaintiff's dispute, GM Financial verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information

at the instruction of GM Financial.  TransUnion's latest credit report dated January 4, 2018 is currently reporting the same inaccurate information that was reported on his January 15, 2017.

**As to Jair Alvarez v. TransUnion/Chase Auto Finance**

42. Jair Alvarez paid off the relevant Chase Auto Finance account in full on or about August 11, 2014.

43.  TransUnion's credit report dated May 22, 2017, reported the account with a "Pay Status: Account 30 Days Past Due Date."

44. TransUnion's credit report dated May 22, 2017, reported the Chase Auto Finance account with a "Pay Status: Account 30 Days Past Due Date" even though the balance on the account was reported as "0." The "0" balance was correct due to the fact Alvarez had paid off the Chase Auto Finance account in full, but the TransUnion credit report dated May 22, 2017, was still reporting the Chase Auto Finance account with a "Pay Status 30 days past due". Even though Plaintiff paid the account in full and TransUnion reported the account with a $0 balance, TransUnion still reported the "Pay Status 30 days past due." as of May 22, 2017, when the TransUnion credit report was created.  It is impossible and inaccurate for an account that was paid off in full and brought current with a "0" balance in August of 2014 to still be reporting as currently 30 Days Past Due Date as of May 22, 2017.  Not only is the Chase Auto Finance account false on the face of the credit report but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on the account that was previously paid off in full.

45. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated July 28, 2017.  As a result of Plaintiff's dispute, Chase Auto Finance verified the account as accurate and instructed TransUnion to continue to report the

inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Chase Auto Finance.  TransUnion's latest credit report dated October 12, 2017 is currently reporting the same inaccurate information that was reported on his May 22, 2017.

**As to Matthew Brumfield v. TransUnion/AES**

46. Matthew Brumfield AES accounts were paid off in full on or about May 11, 2012.

47.  TransUnion's credit report dated February 3, 2017, reported the account with a "Pay Status: Account 120 Days Past Due Date."

48. TransUnion's credit report dated February 3, 2017, reported the AES accounts with a "Pay Status: Account 120 Days Past Due Date" even though the balance on the accounts was reported as "0." The "0" balance was correct due to the fact Brumfield had paid off the two AES accounts in full, but the TransUnion credit report dated February 3, 2017, was still reporting the AES accounts with a "Pay Status 120 days past due".  Even though Plaintiff paid the accounts in full and TransUnion reported the accounts with a $0 balance, TransUnion still reported the "Pay Status 120 days past due." as of February 3, 2017, when the TransUnion credit report was created.  It is impossible and inaccurate for an account that was paid off in full and brought current with a "0" balance in May of 2012 to still be reporting as currently 120 Days Past Due Date as of February 3, 2017.  Not only are the AES  accounts false on their face of the credit report, but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on the account that was previously paid off in full.

49. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated March 7, 2017.  As a result of Plaintiff's dispute, AES verified the account as accurate and instructed TransUnion to continue to report the inaccurate

credit information.   TransUnion continued to report the inaccurate credit information at the instruction of AES.   TransUnion's latest credit report dated July 7, 2017 is currently reporting the same inaccurate information that was reported on his February 3, 2017.

**As to Michael Green v. TransUnion/Specialized Loan Servicing/Capital One**

50. Plaintiff Michael Green paid off his Specialized Loan Servicing account in full on or about February 6, 2015.

51.  Plaintiff Michael Green paid off his Capital One account in full on or about February 8, 2013.

52. TransUnion's credit report dated October 3, 2017, reported the Specialized Loan Servicing account with a "Pay Status: Account 120 Days Past Due Date."

53. TransUnion's credit report dated October 3, 2017, reported the Capital One account with a "Pay Status: Account 120 Days Past Due Date."

54. Even though Green paid off his Specialized Loan Servicing and Capital One accounts in full, Plaintiff's TransUnion credit report dated October 3, 2017, reports both accounts as "Pay Status 120 days past due".   After Plaintiff paid the accounts in full, both accounts were still reported by TransUnion with a $0 balance and along with monthly payments that are due, ("Terms: $868 per month for 360 months" and the "Pay Status 120 days past due." as of October 3, 2017, when the TransUnion credit report was created.  It is impossible to have an account that is paid off in February 2013 and February 2015, bringing the accounts current at that time, with a "0" balance, but still report the account as currently 120 days past due as of October 3, 2017. Not only are the accounts false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on the accounts.

55. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated March 12, 2018.   As a result of Plaintiff's dispute, both

Specialized Loan Servicing and Capital one verified the accounts as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Specialized Loan Servicing and Capital One.  TransUnion's latest credit report dated May 10, 2018 is currently reporting the same inaccurate information that was reported on his October 3, 2017.

**As to Rafael Pichardo v. TransUnion/Fedloan Servicing**

56. Rafael Pichardo's two Fedloan accounts were paid off in full on or about March 2016.

57.  As of October 5, 2017, TransUnion was reporting the account with a "Pay Status: Account 120 Days Past Due Date."

58. Even though Pichardo's Fedloan accounts were paid off in full, TransUnion was reporting them with a "Pay Status 120 days past due".  After Pichardo's Fedloan accounts were paid off in full, the accounts were still being reported by TransUnion with a $0 balance, monthly payments that are due and a "Pay Status 120 days past due" as of October 5, 2017.  It is impossible to have an account that is paid off in March 2016, bringing the account current at that time, with a "0" balance, but still report the account as currently 120 days past due as of October 5, 2017. Not only is the account false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on this account.

59. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated October 18, 2017.  As a result of Plaintiff's dispute, Fedloan Servicing verified the accounts as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Fedloan Servicing.  TransUnion's latest credit report dated July 23, 2018 is

currently reporting the same inaccurate information that was reported on his October 5, 2017 credit report.

**As to Stephany Hernandez v. TransUnion/Fedloan Servicing/Navient**

60. Plaintiff, Stephany Hernandez, Fedloan Servicing accounts were paid off in full on or about March 2017.

61.  Plaintiff, Stephany Hernandez, Navient accounts were paid off in full on or about January 2013.

62. TransUnion's credit report dated July 26, 2017, reported the Fedloan Servicing account with a "Pay Status: Account 120 Days Past Due Date."

63. TransUnion's credit report dated July 26, 2017, reported the Navient account with a "Pay Status: Account 120 Days Past Due Date."

64. Even though Hernandez Fedloan Serving and Navient accounts were paid off in full, TransUnions's credit report for Hernandez dated October 2, 2017, reported both accounts with a "Pay Status 120 days past due."  This means that even though Plaintiff's Fedloan Serving and Navient accounts were paid in full, both accounts were being reported by TransUnion with a $0 balance and monthly payments due as of October 2, 2017, which is date the TransUnion credit report was created.  It is impossible to have accounts that are paid off in full bringing them to a "0" balance in March of 2017 and January of 2013, bringing the accounts current at that time, with a "0" balance, to still be reporting as currently 120 days past due as of October 2, 2017. Not only are the accounts false on the face of the credit report but it is extremely misleading, making it look like that the Plaintiff is still late on the accounts.

65. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letters to TransUnion, dated July 28, 2017.  As a result of Plaintiff's dispute, both Fedloan Servicing and Navient verified the accounts as accurate and instructed TransUnion to

continue to report the inaccurate credit information.   TransUnion continued to report the inaccurate credit information at the instruction of Fedloan Servicing and Navient.  TransUnion's latest credit report dated October 2, 2017 is currently reporting the same inaccurate information that was reported on his July 28, 2017 credit report.

**As to Tiffany Cummings v. TransUnion/Chase Corporation**

66. Tiffany Cummings paid off her Chase Corporation account in full on or about October of 2015.

67.  TransUnion's credit report dated September 27, 2016, reported the account with a "Pay Status: Account 120 Days Past Due Date."

68. TransUnion's credit report dated September 27, 2016, reported the Chase Corporation account with a "Pay Status: Account 120 Days Past Due Date" even though the balance on the account was reported as "0." The "0" balance was correct due to the fact Cummings had paid off the Chase Corporation account in full, but the TransUnion credit report dated September 27, 2016, was still reporting the Chase Corporation account with a "Pay Status 120 days past due". Even though Plaintiff paid the Chase Corporation account in full and TransUnion reported the account with a $0 balance, TransUnion still reported the "Pay Status 120 days past due" as of September 27, 2016, when the TransUnion credit report was created.  It is impossible and inaccurate for an account that was paid off in full and brought current with a "0" balance in October of 2015 to still be reporting as currently 120 Days Past Due Date as of September 27, 2016.  Not only is the Chase Corporation account false on the face of the credit report but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on the account that was previously paid off in full.

69. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated January 24, 2017.  As a result of Plaintiff's dispute, Chase Corporation verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Chase Corporation.  In February 2017, TransUnion sent the results from the investigation, which verified the account as accurate and is currently reporting the same inaccurate information that was reported on her September 27, 2016.  As of January 23, 2019, TransUnion is still reporting this same Chase Corporation Account with a status of "Account 120 Days Past Due Date."

**As to Victor Vega v. TransUnion/USDOE-GLELSI**

70. Victor Vega's USDOE – GLESSI account paid in full and closed on or about June 2016.

71.  As of October 15, 2017, TransUnion was reporting the account with a "Pay Status: Account 120 Days Past Due Date."

72. TransUnion's credit report dated October 15, 2017, reported the USDOE – GLESSI account with a "**Pay Status: Account 120 Days Past Due Date**" even though the balance on the account was reported as "0." The "0" balance was correct due to the fact Vega's account with USDOE – GLESSI was paid off in full, but the TransUnion credit report dated October 15, 2017, was still reporting the USDOE – GLESSI account with a "**Pay Status 120 days past due**".  Even though Plaintiff paid the account in full and TransUnion reported the account with a $0 balance, TransUnion still reported the **"Pay Status 120 days past due**" as of October 15, 2017, when the TransUnion credit report was created.  It is impossible and inaccurate for an account that was paid off in full and brought current with a "0" balance in June 2016 to still be

reporting as currently **120 Days Past Due Date** as of October 15, 2017.  Not only is the USDOE – GLESSI account false on the face of the credit report but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on the account that was previously paid off in full

73. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to TransUnion, dated November 6, 2017.  As a result of Plaintiff's dispute, USDOE-GLELSI verified the account as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of USDOE-GLELSI.  TransUnion's latest credit report dated June 21, 2018 is currently reporting the same inaccurate information that was reported on his October 15, 2017 credit report.

**As to Danila Zaldivar v. TransUnion/Fedloan Servicing**

74. Danila Zaldivar paid off her account in full on or about January 2017.

75. TransUnion's credit report dated August 18, 2017, reported two Fedloan Servicing accounts with a "Pay Status: Account 120 Days Past Due Date." However, even though Zaldivar paid off her accounts in full, Plaintiff's TransUnion credit report dated August 18, 2017, reports the "Pay Status 120 days past due".  After Plaintiff paid the accounts in full, the accounts are reporting by TransUnion with a $0 balance, but still reporting that monthly payments are due, "Terms: "monthly for 141 months" and the "Pay Status 120 days past due" as of August 18, 2017, when the TransUnion credit report was created.  It is impossible and incorrect for an account that was paid off and brought current with a "0" balance in January 2017 to still be reporting as currently 120 Days Past Due Date as of August 18, 2017.  Not only are the Fedloan Servicing accounts false on the face of the credit report but this reporting is extremely

misleading because it makes it look like the Plaintiff is still late on these accounts that were previously paid off in full.

76. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and through dispute letter to TransUnion, dated August 24, 2017.  As a result of Plaintiff's dispute, Fedloan Servicing verified both accounts as accurate and instructed TransUnion to continue to report the inaccurate credit information.  TransUnion continued to report the inaccurate credit information at the instruction of Fedloan Servicing.  On or about September 18, 2017, TransUnion sent the results from the investigation, which verified both accounts as accurate and is currently reporting the same inaccurate information that was reported on her August 18, 2017 credit report.

**Parroting bad data**

77. When an account is disputed with TransUnion, they send an ACDV to the data furnisher with the information they have "on profile".  The data furnisher will then return the ACDV to the credit reporting agencies with their edits/changes/modifications to the credit information, or the data furnisher can delete or remove the account from the consumer's credit report as well.   Plaintiffs disputed their accounts with detailed and thorough dispute letters, informing TransUnion, as well as with each data furnisher, that the accounts were reporting with a current status of being past due, even though the accounts were paid off and closed.  TransUnion is doing nothing more than parroting information that the data furnishers are providing them without any care of its accuracy.  Parroting information is a willful/reckless violation of the FCRA.  Please see Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 463 (E.D. Pa. 2010)(It was not unreasonable for the jury to conclude that TransUnion willfully or recklessly violated the FCRA by doing nothing more than "parroting information" it received from ACCB. Cushman, 115 F.3d at 225 ("[A] 'reinvestigation' that merely shifts the

burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Campbell v. Chase Manhattan Bank, USA, N.A.,* No. 02–3489, 2005 WL 1514221, at *16 (D.N.J. June 27, 2005) (parroting information received from original source may be considered a willful violation of the FCRA). Thus, there is no basis to disturb the jury's finding that TransUnion.).

### TransUnion is responsible for the accuracy of the information they obtain from the data furnishers

78. TransUnion is responsible for the accuracy of the information they obtain from the data furnishers.  Please also see Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993)(In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers. *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608 F.Supp. 972, 976 (M.D.Fla.1985).)

79. TransUnion did not follow reasonable procedures to assure maximum possible accuracy and has been reporting false and inaccurate information even after it has known or should have known the information was incorrect.

80. GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI did not provide a good faith investigation into the disputed accounts of Plaintiffs.

81. TransUnion did not provide a good faith investigation into the disputed GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI accounts.

82. The GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI accounts are not only inaccurate but is also misleading, which the Fifth Circuit has addressed. The Fifth Circuit has

ruled that a credit report is inaccurate on its face if so misleading that it leads to adverse credit decisions, *please see Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895 (5th Cir. 1988)(a consumer report is inaccurate if it is "misleading in such a way and to such an extent that it may be expected to adversely effect credit decisions").

83. TransUnion has a statutory duty to have reasonable procedures to assure maximum accuracy. Their procedures regarding this reporting are not assuring accuracy, much less maximum accuracy.

84. The reporting of this credit information on Plaintiffs' credit reports negatively reflects upon the Plaintiffs, Plaintiffs' credit repayment history, Plaintiffs' financial responsibility as a debtor and Plaintiffs' credit worthiness. This information was furnished by GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI and reported by TransUnion, misrepresenting the payment rating and/or status of Plaintiffs' accounts, and is currently being reported and is reflected on Plaintiffs' credit reports, resulting in lowering Plaintiff's credit score and furthering Plaintiff's damages.

85. Plaintiffs' credit reports, credit information and file formulated by TransUnion have been viewed by current and potential credit grantors and extenders of credit, as indicated by inquiries on each of their credit reports.  The inaccurate information furnished by GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI and reported by TransUnion is continuing to damage the Plaintiffs' credit rating as well as their credit reputation.

86. As a result of Defendants TransUnion, GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and

USDOE/GLELSI conduct, Plaintiffs have suffered great physical, emotional and mental pain and anguish, all to Plaintiffs' great detriment and loss.

87. As a result of Defendants TransUnion, GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI conduct, Plaintiffs have suffered actual damages all to Plaintiffs' great detriment and loss.

88. At all times pertinent hereto, Defendants TransUnion, GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

89. At all times pertinent hereto, the conduct of the Defendants TransUnion, GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiffs herein.

**CAUSES OF ACTION**

90. Plaintiffs incorporates by reference the foregoing paragraphs and footnotes as though the same were set forth at length herein.

91. This suit is based upon the Defendants violation of the Fair Credit Reporting Act. All causes of action were the producing causes of damages which Plaintiff suffered.

**COUNT I—VIOLATION OF THE FAIR REPORTING ACT**

92. Plaintiffs incorporate by reference the foregoing paragraphs and as though the same were set forth at length herein.

93. This suit is brought against all Defendants as the damages made the basis of this suit were caused by their violation of the FCRA. In all instances of violating the FCRA, Defendants did so willfully and/or negligently. Under, 15 U.S.C. §1681n and §1681o, the Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys fees.

15 U.S.C. §1681n, "Civil Liability for willful noncompliance" reads:

(a) Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1)        any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000

(2) such amount of punitive damages as the court may allow; and

(3)        in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court.

And, 15 U.S.C. §1681o, "Civil Liability for negligent noncompliance" reads:

(a ) Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of:

(1) any actual damages sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action with reasonable attorney's fees as determined by the court.

94. TransUnion violated their duty under 15 U.S.C. §1681i(a)(1)(A) to conduct a good faith investigation into Plaintiffs' notice of dispute. Plaintiffs requested TransUnion to reinvestigate the inaccurate reporting of their accounts via detailed and thorough dispute letters.

95. The disputes were detailed, thorough and informed TransUnion of all the relevant information regarding the inaccuracies of the accounts and provided enough information to show the accounts were being reported inaccurately.

96. TransUnion did not conduct a good faith and reasonable investigation into Plaintiffs' disputes.

97. These accounts were paid off and TransUnion is currently reporting Plaintiffs' accounts with a "$0" balance but currently past due. It is impossible for Plaintiffs to make "$0" payments to bring the accounts current. With this type of reporting, Plaintiffs will never be able to bring the accounts current.

100. TransUnion was notified and made aware of the specific issues from the dispute letters. It should have been easy for TransUnion to determine that the account was extremely inaccurate with the information that was provided.

101. The fact that TransUnion is currently reporting inaccurate information on Plaintiffs' credit profiles/credit reports to the best of Plaintiffs' information and belief, which are viewable and have been viewed by third parties, is proof that TransUnion did not conduct a reasonable investigation.  If TransUnion would have properly investigated the issues, they would have determined that the accounts were paid off, with a "$0" balance and still reporting as if Plaintiffs are currently late and past due. If TransUnion had conducted this proper investigation they would have corrected or deleted the Plaintiffs' accounts that are inaccurate and misleading.

The section entitled "Procedure in case of disputed accuracy" under 15 U.S.C. §1681i(a)(1)(a) reads:

(a)  Reinvestigations in case disputed information

(1) Reinvestigation required

(A) In general-- Subject to subjection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting

agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

And:

15 U.S.C. §1681i(a)(5) reads:

(5)                         Treatment of Inaccurate or Unverifiable Information

(A)      *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

(i)      promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii)      promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

102.  Defendants GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI, violated their duty under 15 U.S.C. §1681s-2(b) to conduct a reasonable and good faith investigation into Plaintiffs' notice of disputes and failing to delete or correct the inaccurate information. After receiving a dispute notice from TransUnion, Defendants GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI did not conduct a complete, accurate or reasonable investigation into the disputed issue. GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI verified the inaccurate information that was disputed from a detailed and thorough dispute letters. GM Financial, Chase

Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI should have discovered that the information they are providing the Credit Reporting Agencies was not accurate. GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI knew of their current faulty reporting because Plaintiffs paid them in full, with $0 balances.   Had Defendants GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI properly investigated Plaintiffs' disputes, they would have corrected the reporting to a current status.  It is impossible for Plaintiffs to make "$0" payments to bring the accounts current.   GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI were made fully aware of the inaccurate reporting and failed to correct or delete the accounts.

**The section entitled "Duty of Furnishers of Information Upon Notice of Dispute" under 15 U.S.C. §1681s-2(b) reads:**

**(1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall**

**(A) conduct an investigation with respect to the disputed information:**

**(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;**

**(C) report the results of the investigation to the consumer reporting agency;**

**(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.**

**(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation**

**under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate based on the results of the reinvestigation promptly**

(i) **modify that item of information**
(ii)      **delete that item of information**
(iii)     **permanently block the reporting of that item of information**

103.    TransUnion is currently violating 15 U.S.C. §1681e(b), by not following reasonable procedures to assure maximum possible accuracy.

104.    Plaintiffs accounts were paid off  in full, but TransUnion continued to report the accounts with a late/past due status.

105.      If TransUnion had reasonable procedures, they would not allow an account to report as though the account is currently past due, with a "$0" balance, after the account was paid off and brought current. TransUnion should be reporting the accounts as "current" and not "past due".  These accounts are reporting as though the Plaintiffs are currently past due each month. With this type of reporting, Plaintiffs will never be able to make their accounts current. TransUnion lacks the procedures to avoid such faulty reporting. TransUnion know that these accounts were paid, however, they continue to report a current status as past due.

(b ) Accuracy of the Report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures as assure maximum possible Accuracy of the information concerning the individual about whom the report relates

**ACDV/CDV process ruled to be inadequate**

106.      TransUnion's investigation processes also lacks reasonable procedures. TransUnion's investigation process into these disputes was nothing more than sending an ACDV/CDV to the data furnishers to "verify" account information.  TransUnion received

ACDV/CDV responses from the data furnishers and continued to report bad credit information that data furnishers responded with. The Fifth Circuit, District Courts in Louisiana as well as federal courts across the country has ruled that relying on the ACDV is not an investigation. Please **see Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993)** (**TRW relied solely on the CDVs despite the number of disputed accounts and the allegations of fraud. TRW also relied on the subscribers to tell TRW whether to delete information from Stevenson's report. In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers.** *See Swoager v. Credit Bureau of Greater St. Petersburg, Fla.,* 608 F.Supp. 972, 976 (M.D.Fla.1985).); please also see Pace v. Experian Info. Sols. Inc., CIV.A. 2:03-CV-45, 2004 WL 1057795, at *2 (E.D. Tex. Apr. 28, 2004)(**When a credit reporting agency receives notice of inaccurate information from a consumer, § 1681i(a) imposes a duty on the agency to reinvestigate the accuracy of the information. In this circuit, the law is clear that "in a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."** *Stevenson v. TRW, Inc.,* **987 F.2d 288 (5**th **Cir.1998)(affirming finding of negligence where credit reporting agency relied exclusively on consumer dispute verification forms (CDVs) when discharging its reinvestigation duties**); please also see Zala v. TransUnion, LLC, CIV. A. 3:99-CV-0399, 2001 WL 210693, at *5 (**N.D. Tex. Jan. 17, 2001)(In** *Stevenson v. TRW Inc.,* **987 F.2d 288, 293 (5th Cir.1993), the Fifth Circuit held that a consumer reporting agency that relied solely on subscribers' written consumer dispute verification forms rather than contacting the subscribers directly was negligent.** The court noted that even though the credit agency was unable to verify some disputed accounts, it failed to remove those disputed accounts

from the credit report. *Id.* **Rejecting as insufficient the credit agency's practice of relying on the consumer to resolve the problem with the creditor, the court stated that "[i]n a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."** *Id.* ). Courts across the country have also ruled that relying only on ACDVs does not constitute an investigation in to consumer's disputes. please also see <u>White v. TransUnion, LLC</u>, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006)(TransUnion **seeks to deflect responsibility for this inaccuracy to the creditors** upon whom it relies for information and falls back on its assertion that **"a creditor is in a better position than a consumer reporting agency with regard to the ability to detect and correct errors in the reporting of a consumer's account**." Def.'s Mot. to Dismiss Pls.' Second Am. Consolidated Class Comp. 13:12-14. **This hardly suffices to establish, as a matter of law, that a "reasonable reinvestigation" amounts to an inquiry that goes only to confirmation of the accuracy of information from its original source**. *Cushman v. TransUnion Corp.,* 115 F.3d 220, 225 (3d Cir.1997) ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 286-87 (7th Cir.1994); *Stevenson v. TRW, Inc.,* 987 F.2d 288, 293 (5th Cir.1993); *McKeown v. Sears Roebuck & Co.,* 335 F.Supp.2d 917, 930 (W.D.Wis.2004); please also see <u>Dixon-Rollins v. Experian Info. Sols., Inc.</u>, 753 F. Supp. 2d 452, 465 (E.D. Pa. 2010)(**the Third Circuit instructed TransUnion that it may not just repeat information it receives from the original source, but must do more to verify the credit information.** *Cushman,* 115 F.3d at 225. Since *Cushman* was decided, TransUnion has been repeatedly

warned of its statutorily required obligation in conducting a reinvestigation, *see e.g., Krajewski,* 557 F.Supp.2d at 616; *Crane,* 282 F.Supp.2d at 320; *Lawrence,* 296 F.Supp.2d at 589; *Saenz v. TransUnion, LLC,* 621 F.Supp.2d 1074, 1083 (D.Or.2007) (**TransUnion must do more than parrot information received by original source**); *Lambert v. Beneficial Mortgage Corp.,* No 05–5468, 2007 WL 1309542, at *2 (W.D.Wash. May 7, 2007) (in certain circumstances a consumer reporting agency may need to verify the accuracy of its initial source of information) (citations omitted), and found liable for noncompliance. *See, e.g., Mullins v. Equifax Info. Servs., LLC,* No. 05–888, 2007 WL 2471080, at *7 n. 11 (E.D.Va. Aug. 27, 2007).[7] Thus, because TransUnion has been **warned of its inadequate reinvestigation practices in prior cases, it may be considered a repeat FCRA offender**. *See Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.,* 399 F.3d 224, 232 (3d Cir.2005) (recidivist behavior relates to defendant's conduct as to non-parties). **TransUnion's refusal to modify its reinvestigation procedures and insistence on mimicking the original sources' responses supports the conclusion that punitive damages are necessary to deter future violations**. "[E]vidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that **strong medicine is required to cure the defendant's disrespect for the law**." *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 576–77, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Thus, **because TransUnion has continued to disregard its obligations despite clear judicial rulings and warnings, its conduct is more reprehensible than that of a first time offender, requiring more severe punishment**. *Id.* at 577, 116 S.Ct. 1589.); please see Grigoryan v. Experian Info. Sols., Inc., 84 F. Supp. 3d 1044, 1074–75 (C.D. Cal. 2014)(It is well settled that exclusive reliance on ACDV procedures does not suffice, as a matter of law, to establish that a "reasonable investigation" took place once a consumer disputes the accuracy of

the furnisher's information. See *Bradshaw v. BAC Home Loans Servicing, LP,* 816 F.Supp.2d 1066, 1073–74 (D.Or.2011) ("Many courts, including this one, have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation"); *White v. Trans \*1075 Union, LLC,* 462 F.Supp.2d 1079, 1083 (C.D.Cal.2006) ("TransUnion seeks to deflect responsibility for this inaccuracy to the creditors upon whom it relies for information and falls back on its assertion that 'a creditor is in a better position than a consumer reporting agency with regard to the ability to detect and correct errors in the reporting of a consumer's account.' ... This hardly suffices to establish, as a matter of law, that a 'reasonable reinvestigation' amounts to an inquiry that goes only to confirmation of the accuracy of information from its original source"); see also *Cushman v. TransUnion Corp.,* 115 F.3d 220, 225 (3d Cir.1997) ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources"); *Apodaca v. Discover Fin. Servs.,* 417 F.Supp.2d 1220, 1230–31 (D.N.M.2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed).

107.     The ACDV/CDV is nothing more than a verification, not an investigation. In addition to TransUnion's lack of reporting procedures that allow such erroneous reporting, TransUnion's investigation process lacks the proper procedures as well.

108.     The conduct of Transunion, GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI were a direct and proximate cause, as well as, a substantial factor in bringing about the serious injuries, damages and harm to Plaintiffs that are outlined above and, as a result,

Defendants are liable to compensate Plaintiffs for the full amount of actual, statutory, compensatory and punitive damages, as well as, such other relief, permitted by law.

## DEMAND FOR JURY TRIAL

109.   Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs seek judgment in Plaintiffs' favor and damages against the Defendants TransUnion and GM Financial, Chase Corporation, Chase Auto Finance, AES, Fedloan Servicing, Specialized Loan Servicing, Capital One, Navient and USDOE/GLELSI based on the following requested relief:

a.      Actual damages pursuant to 15 U.S.C. §1681;

b.      Statutory damages pursuant to 15 U.S.C. §1681;

c.      Punitive damages pursuant to 15 U.S.C. §1681;

d.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n, §1681o; and

e.      Such other and further relief as may be necessary, just and proper.

Dated:  February 13, 2019

Respectfully submitted,

/s/Jonathan Raburn
Jonathan Raburn
ATTORNEY FOR PLAINTIFFS
Louisiana Bar Roll No. 28728
McCarty & Raburn, A Consumer Law Firm, PLLC
3000 Custer Rd. Suite 270 #1501
Plano, Louisiana 75075
jonathan@geauxlaw.com
225-412-2777